# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**412**

**CA 13-01873**

PRESENT: SMITH, J.P., FAHEY, PERADOTTO, SCONIERS, AND VALENTINO, JJ.

---

IN THE MATTER OF JEFFREY A. THOMPSON,
PETITIONER-APPELLANT-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

JEFFERSON COUNTY SHERIFF JOHN P. BURNS AND
COUNTY OF JEFFERSON,
RESPONDENTS-RESPONDENTS-APPELLANTS.

---

ENNIO J. CORSI, NEW YORK STATE LAW ENFORCEMENT OFFICERS UNION, COUNCIL 82, AFSCME, AFL-CIO, ALBANY, FOR PETITIONER-APPELLANT-RESPONDENT.

DAVID J. PAULSEN, COUNTY ATTORNEY, WATERTOWN (JOHN L. SABIK OF COUNSEL), FOR RESPONDENTS-RESPONDENTS-APPELLANTS.

---

Appeal and cross appeal from a judgment (denominated order) of the Supreme Court, Jefferson County (Hugh A. Gilbert, J.), entered December 21, 2012 in a proceeding pursuant to CPLR article 78. The judgment, among other things, granted the petition in part.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by confirming the determination in its entirety and dismissing the petition and as modified the judgment is affirmed without costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking to annul the determination, made after an advisory arbitration hearing, suspending him for 45 days without pay from his employment as a correction officer in the Sheriff's Office of respondent County of Jefferson based on his violation of three departmental rules and regulations. Supreme Court confirmed the determination with respect to charge one, which alleged that petitioner had violated section 4.2 of the Sheriff's Department's Unified Code of Conduct (Conduct Unbecoming Members and Employees), and charge two, which alleged that he had violated section 4.3 of the Code of Conduct (Consorting with Persons of Ill Repute). The court granted that part of the petition seeking to vacate the finding of guilt with respect to charge three, which alleged that petitioner violated section 4.12 of the Code of Conduct (Membership and Organizations), and remitted the matter to respondents "to determine whether the penalty should be adjusted as a result." We conclude that the determination should be confirmed in its entirety and that the petition should be dismissed, and we therefore modify the judgment accordingly.

Initially, we agree with respondents that the proper standard of review is whether there is a rational basis for the determination or whether it is arbitrary and capricious, and not whether the determination is supported by substantial evidence (*see Matter of Fortune v State of N.Y., Div. of State Police*, 293 AD2d 154, 157; *Matter of Pierino v Brown*, 281 AD2d 960, 960; *Matter of Marin v Benson*, 131 AD2d 100, 103; *see generally Matter of Pell v Board of Educ. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231).  Here, the hearing was mandated by a collective bargaining agreement and not required by statute or law, thereby making the former standard the appropriate standard of judicial review (*see* CPLR 7803 [4]; *Matter of Colton v Berman*, 21 NY2d 322, 329; *Pierino*, 261 AD2d at 960).  Contrary to respondents' contention, however, we conclude that both the determination of guilt and the penalty imposed are subject to judicial review (*cf. Antinore v State of New York*, 49 AD2d 6, 8, *affd* 40 NY2d 921; *see generally Matter of Plainedge Fedn. of Teachers v Plainedge Union Free Sch. Dist.*, 58 NY2d 902, 903-904).

With respect to the merits, "[a]n action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (*Matter of Peckham v Calogero*, 12 NY3d 424, 431).  An agency's determination "is entitled to great deference" (*Matter of Walker v State Univ. of N.Y. [Upstate Med. Univ.]*, 19 AD3d 1058, 1059, *lv denied* 5 NY3d 713 [internal quotation marks omitted]) and, "[i]f the [reviewing] court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency" (*Peckham*, 12 NY3d at 431; *see Matter of Diocese of Rochester v Planning Bd. of Town of Brighton*, 1 NY2d 508, 520).  Moreover, it is well settled that law enforcement officers may be "held to higher standards than ordinary civil service employees" (*Matter of Batista v Kelly*, 16 AD3d 182, 182), and that "an administrative determination regarding discipline will be afforded heightened deference where a law enforcement agency . . . is concerned" (*Fortune*, 293 AD2d at 157; *see Trotta v Ward*, 77 NY2d 827, 828, *rearg dismissed* 79 NY2d 887).

Here, we conclude that the determination with respect to the three disciplinary charges is neither arbitrary nor capricious, and that there is a rational basis for such determination (*see Fortune*, 293 AD2d at 157; *Marin*, 131 AD2d at 103; *see generally Plainedge*, 58 NY2d at 903-904).  All three charges arise from petitioner's voluntary, off-duty attendance at a social event hosted and/or sponsored by the Hells Angels Motorcycle Club (Hells Angels).  With respect to charge one, for unbecoming conduct, respondents rationally determined that petitioner's attendance at an event organized by Hells Angels brought disrepute on and/or discredited the Sheriff's Department and petitioner as a correction officer and employee thereof in violation of section 4.2 of the Code of Conduct.  Respondents established that Hells Angels has a reputation in the law enforcement community as an outlaw motorcycle club, and that its members are known to be involved in criminal activity, including drug smuggling, violent

crime, and weapons trafficking. Indeed, petitioner acknowledged during the hearing that he was aware that Hells Angels members have been involved in criminal activity, that the federal government considers it an outlaw motorcycle gang, and that it is "perceived as a criminal organization." Respondents further established that petitioner's conduct "impair[ed] the operation or efficiency of the department or the member/employee" in violation of section 4.2. The county jail administrator testified at the hearing that Hells Angels is classified as a "security threat group" in the correction community, and that its members are known to be involved in criminal activity in jails and prisons.

With respect to charge two, for consorting with persons of ill repute, the jail administrator testified that he considered any member of Hells Angels to be "a person of ill repute, regardless of the person's criminal history, because the organization itself has close ties to organized crime." A detective who was involved in police surveillance of the event testified that he observed Hells Angels members at the event, and that he recognized another attendee as "a person known in the area to be associated with Hells Angels" and who has a criminal history. In any event, even if petitioner did not in fact "consort" with a person of ill repute at the event, we conclude that there is a rational basis for the determination that a Hells Angels-sponsored event is a place where "persons of questionable character" would be likely to congregate within the meaning of section 4.3 of the Code of Conduct.

As for charge three, concerning membership and organizations, although it is undisputed that the motorcycle club to which petitioner belongs is not affiliated with Hells Angels, we conclude that there is a rational basis for the determination that petitioner's attendance at an official Hells Angels-sponsored event constituted a "knowing[ ] . . . connect[ion]" with a "subversive organization," i.e., "an[] organization . . . whose object or purpose, either directly or indirectly, would adversely affect the discipline or conduct of the members/employees" in violation of section 4.12 of the Code of Conduct.

Finally, we agree with respondents that the penalty is not "so disproportionate to the offense as to be shocking to one's sense of fairness" (*Pell*, 34 NY2d at 237; *see Matter of Fodera v Daines*, 85 AD3d 1452, 1456, *lv denied* 17 NY3d 714; *Marin*, 131 AD2d at 103-104; *see generally Matter of Gamma v City of Newburgh*, 277 AD2d 236, 237). As a law enforcement officer with over 20 years of experience as a correction officer, petitioner should have known that his participation in a Hells Angels-sponsored event would raise, at the very least, an appearance of impropriety, and that such participation could potentially jeopardize his authority and effectiveness as a correction officer. As the Sheriff argued during the hearing, "[t]he special trust bestowed upon correction officers requires that they abide by strict rules of behavior, as it is the high moral character upon which the safety of the jail and the individuals housed and working there depends." Inasmuch as the record establishes that petitioner was "unrepentant, insisting that his personal opinion of

[Hells Angels] and its members was the only criterion upon which his conduct should be judged," we see no basis to disturb the penalty imposed (*see Pell*, 34 NY2d at 237; *see generally Trotta*, 77 NY2d at 827; *Batista*, 16 AD3d at 182).

Entered:  June 13, 2014                         Frances E. Cafarell
                                                Clerk of the Court